OPINION OF THE COURT
Vincent R. Rippa, J.
In this action, which has been pending since 1999, defendant is charged with violating section 111-8 of the Code of the City of New Rochelle (the City Code) by erecting a metal frame *514 structure (the structure)* wrapped with plastic on the grounds of his nursery business without a building permit. After the court denied defendant’s motion for dismissal of the charges and a subsequent motion to renew and reargue, the action went to trial on May 17, 2002.
The credible evidence adduced at the trial established that the defendant Henry Camardella (Camardella or defendant), the owner of a retail nursery in the City of New Rochelle, had erected a structure of approximately 24 feet by 36 feet consisting of a frame of galvanized pipes covered with plastic material, which the defendant categorized as greenhouse film, sometime in mid-1998. In November 1999, Paul Vacca (Vacca), a building construction inspector for the City of New Rochelle (the City), issued a violation to Camardella and HJC Enterprises for having “erected a metal frame (quonset hut style) storage structure without obtaining a building permit.” (People’s information.)
Vacca testified at trial that he had not closely inspected the structure and could not say whether it was erected on a foundation or cemented into the ground. He also stated that he did not know what, if anything, was contained in the structure since he had not inspected the inside.
On cross-examination, Vacca was questioned by defendant’s attorney as to whether attachment to the ground would be necessary before a permit was required and whether he was aware of the exemption under the State Code for temporary greenhouses. Vacca stated that even a temporary structure such as a tent would require a permit under the City Code, and that even though he had just become aware of the state statute exempting temporary greenhouses from the permit requirement, he did not consider defendant’s structure a temporary greenhouse.
Leslie Appel, who has resided at 25 Siebrecht Place for 25 years and whose property adjoins Camardella’s, testified that in April of 1998 a structure in the shape of a plane hangar consisting of metal bars and covered with some type of mesh was put up on the nursery grounds some six to eight feet away from her property line. She added that from her home she can see the structure and that in the past four years she has seen garden statuary, ornaments, pots, gardening supplies, wreaths, pumpkins and flowers stored therein, and has observed customers of the nursery inside the structure.
*515 At the conclusion of the People’s case the defendant made a motion for dismissal of the information on the grounds that (1) the People have failed to prove a prima facie case, and (2) the structure was a temporary greenhouse and Vacca had issued the violation based on a lack of knowledge of Executive Law § 372 (3), which exempts such greenhouses from the permit requirements of the Code. Said motions are hereby denied as the evidence put forth by the People was sufficient to sustain a prima facie showing. In addition, the issue of whether or not the structure is a temporary greenhouse is one of fact and therefore not proper for dismissal as a matter of law.
During defendant’s case Camardella testified that the structure on his nursery’s property was a temporary greenhouse made up of galvanized pipe and covered with plastic greenhouse film. He stated that there is no cement foundation but that the pipes are driven into the ground.
Questioned about the use of the structure, Camardella testified that it is used to grow and store plants and that people walk into it to select flowers but do not pay for them there but instead go to the cash registers in the main building. Upon further questioning Camardella acknowledged that firewood, wreaths, Christmas trees, statuary and even a motorcycle have been stored in the structure, and that even though he does some growing in there, the flowers come from greenhouse sales distributors in the form of cuttings which he then finishes for sale.
Several photographs of the defendant’s property and the structure at issue were introduced in evidence. One such photograph, taken in 1999, was shown to defendant and he acknowledged that, as depicted therein, firewood had been stored in the structure at the time.
Section 111-8 of the City Code, which defendant is charged with violating, states:
“Building permit required.
“No person, firm or corporation shall commence the erection, construction, enlargement, alteration, removal, improvement, demolition, excavation or conversion of any building or structure or part thereof, or change the occupancy or use of any building or structure or part thereof, or perform any work which must conform to the New York State Fire Prevention and Building Code, or cause the same to be done, without first filing with the Building Official an application and obtaining a permit therefor, except as otherwise exempted under the provisions of this code.” (Emphasis added.)
*516 The City Code does not contain a definition of the terms “building” or “structure,” but section 111-1 incorporates said definitions from the New York State Uniform Fire Prevention and Building Code (9 NYCRR 606.1 et seq.). Section 606.3 (a) (24) and (205) of the State Code, respectively, define “building” and “structure” as follows: “Building. A structure wholly or partially enclosed within exterior walls, or within exterior and party walls, and a roof, affording shelter to persons, animals or property” and “Structure. An assembly of materials, forming a construction framed of component structural parts for occupancy or use, including buildings.”
Under the above definitions it is obvious to the court that the assemblage of materials on defendant’s property falls squarely within the statutory definition of “structure.” As such, section 111-8 of the City Code is clearly applicable and Camardella must comply with the City of New Rochelle’s requirement for a building permit.
Defendant, however, has argued that even if the structure on his property is found to be a structure or building, he still should not have to obtain a building permit because it is a temporary greenhouse exempted from such a requirement by a 1992 amendment to the Executive Law. Upon consideration of this argument and a review of the language and legislative history of the amendment, the court finds defendant’s position to be without merit.
Article 18 of the Executive Law, known as the New York State Uniform Fire Prevention and Building Code Act, defines “building” as “a combination of any materials, whether portable or fixed, having a roof, to form a structure affording shelter for persons, animals or property * * * .” (Executive Law § 372 [3].) The statute further provides that “[t]he term ‘building’ shall not include a ‘temporary greenhouse’,” and goes on to describe said term in section 372 (17) as follows:
“ ‘Temporary greenhouse’ means specialized agricultural equipment having a framework covered with demountable polyurethane materials or materials of polyurethane nature and lacking a permanent and continuous foundation, which is specifically designed, constructed and used for the culture and propagation of horticultural commodities. * * * In no instance will a temporary greenhouse be used for the retail sale of any farm or non-farm products.” (Emphasis added.)
Under the aforestated definitions it is clear to the court that the structure on defendant’s nursery property is a “building.” *517 According to the trial testimony, the construction at issue is composed of a combination of materials, it has a roof, and it forms a structure for the sheltering of property. By Camardella’s own admission, the structure has been used to store not only plants, but garden statuary, firewood, cut Christmas trees and wreaths, and even a motorcycle.
In addition, it is uncontroverted that the public has access thereto and can view and select items for purchase from within said structure. The defendant’s contention that this does not constitute sales because there are no money exchanges within the structure and customers must go into an adjacent building to pay for the merchandise is specious. By such a rationale places like the currently popular home improvement warehouses which have separate nursery and outdoor merchandise areas could be said not to be “selling” in those areas because customers must often pay for their purchases at the cashier stations inside the main buildings. Obviously, such a conclusion would be nonsensical.
Moreover, a plain reading of the 1992 amendment relied on by defendant makes it clear that temporary greenhouses are only those structures “specifically designed, constructed and used for the culture and propagation of horticultural commodities.” (Executive Law § 372 [17] [emphasis added].) In addition, the legislative history of the statute and documents contained in the Bill Jacket, copies of which were submitted by the People with their posttrial memoranda, further reinforce the court’s interpretation of the purpose of the amendment.
In a Memorandum to the Counsel to the Governor, the then Executive Deputy Secretary of State, as part of the Department of State’s comments and recommendations, wrote in part:
“The purpose of the amendment is to make clear that a temporary greenhouse is not a structure to which the State Uniform Fire Prevention and Building Code applies. * * *
“The problem to which the bill is addressed arises because sometimes such buildings have not been limited to agricultural uses. For example, some such buildings in which flowering plants were grown were opened to the public for the retail sale of the plants. This is very dangerous because the flammable polyurethane skin of the buildings and the presence of heating and electrical equipment pose a serious fire hazard. In recognition of this the definition of temporary greenhouse excludes retail *518 sales of farm or non-farm products.” (Bill Jacket, L 1992, ch 496.)
Other correspondence attached to the Bill Jacket from the sponsor of the amendment and the Commissioner of the Department of Agriculture further clarifies that the intent behind the amendment was to improve farming conditions and benefit New York State farmers and the horticultural industry in general. In exchange for the exemption of temporary greenhouses from the Uniform Fire Prevention and Building Code requirements, the use of said structures for the retail sale of any farm or nonfarm products was specifically prohibited.
Undoubtedly, defendant’s use of the subject structure for the storage of firewood and motorcycles as well as the display, selection and sale of plants, garden items, Christmas trees and wreaths does not comport with the uses intended by the Legislature for temporary greenhouses. As such, the structure on defendant’s property is subject to the permit requirements of the City of New Rochelle, at the very least as a temporary structure, under section 111-12 (B) of the City Code.

 The court’s use of the term “structure” does not imply a determination of the nature of the construction but is simply employed for ease of description.